## AS TO LICENSING OF MOVING PICTURE OPERATORS.

Common Pleas Court of Hamilton County.

Ex Parte Sam Lewis.

Decided, August 8, 1913.

*Municipal Corporations—Ordinance Providing for Licensing Operators of Moving Pictures—Must Provide a Standard of Qualifications— Section 3657, General Code.*

While a municipality is well within its powers in requiring that operators of moving picture machines shall show themselves to be competent and trustworthy before being permitted to handle so dangerous a mechanism under circumstances which may imperil the lives of an assembly of people, yet an ordinance may have that end in view and still be invalid by reason of failure to provide any standard of qualifications for such operators, leaving the matter of issuing licenses entirely to the judgment or caprice of those authorized to make the examination of applicants.

*Miller & Foster,* for the petitioner.
*John W. Weinig,* Assistant City Solicitor, contra.

GORMAN, J.

On the 2d day of July, 1913, Sam Lewis was arrested upon a warrant issued out of the police court of the city of Cincinnati, charging him with a violation of Ordinance No. 484a, of the municipal code of the city of Cincinnati. The warrant is based upon an affidavit in substance charging that Sam Lewis did, at the city of Cincinnati, county of Hamilton and state of Ohio, unlawfully operate a moving picture machine without having the same in charge of a licensed operator as provided by Section 484a of the code of ordinances of the city of Cincinnati, this unlawful violation of said ordinance having occurred at the Empire Theater, No. 3831 Spring Grove avenue.

After Lewis was arrested upon the warrant, a writ of habeas corpus was sued out on the same day by Amos P. Foster, who

alleged, in his petition, that Sam Lewis was illegally restrained and deprived of his liberty without legal authority by William Copelan, chief of police of the city of Cincinnati. The writ was issued by Judge Geoghegan, and made returnable forthwith. Judge Geoghegan being absent from the city, the matter came on to be heard before me, upon the answer and amended answer of the chief of police, and the petition and the writ.

In substance, the defendant, William Copelan, chief of police of the city of Cincinnati, justifies the arrest and detention of Sam Lewis under a warrant based upon the affidavit above referred to. An amended answer filed by Chief of Police Copelan sets out the ordinance alleged in the affidavit to have been violated.

The ordinance set up is No. 484b, and, in substance, provides that "a board of examiners is created, consisting of four persons, whose duty it shall be to examine operators of moving picture machines; the board to consist of the commissioner of buildings, the deputy inspector of buildings, who is an electrician, the owner or manager of the moving picture theater. and a practical journeyman moving picture operator, the last two members of said board of examiners to be appointed by the mayor." The ordinance further provides that "any person desiring to follow, engage in or work at the occupation of operating a moving picture machine in this city (Cincinnati) shall make application to the commissioner of buildings and the board of examiners, and deposit with his application a fee of one dollar, after which he shall be examined and show to the satisfaction of said board that he is fully qualified and competent to operate such machine. * * * Upon being satisfied, the said commissioner shall issue to the said applicant a certificate of such fact, and no license shall be issued except upon such certificate of the said commissioners. Upon a presentation of said certificate to the city auditor, he shall issue a license, which shall be dated as of February 1st, and renewed annually, authorizing the applicant to engage in the business herein described, and he shall charge a fee of one dollar for the same.

Any person holding a license as herein provided shall be entitled to the renewal without further certificate from the commissioner of buildings, unless such person shall have previously been found by the said commissioner to be incompetent or disqualified as provided in Sections 484 and 484a, and the auditor shall charge a fee of one dollar for each renewal.  *  *  *    No person shall follow, engage in, or work at the occupation of operating such moving picture machine until he shall have first secured the license herein provided."

The question submitted to the court upon these pleadings and the demurrer to the answer and amended answer is, whether or not this ordinance is constitutional.

It is contended, by counsel for Sam Lewis, that said ordinance is invalid, because it is in contravention of the preamble of the Constitution of the United States and of the Constitution of the state of Ohio.

That part of the preamble of the Constitution of the United States which it is claimed is contravened is as follows: "This Constitution is established to promote the general welfare." The part of the Constitution of the state of Ohio which is claimed to be contravened is that part of the preamble which states that "the Constitution is established to promote our common welfare."

The court has given the case full consideration, and has come to the conclusion that this ordinance is invalid, upon the authority of *Harmon* v. *State*, 66 O. S., 249. That case arose upon the construction to be given to the act of the Legislature known as the Roberts law, passed by the General Assembly of the state of Ohio, March 1, 1900 (94 O. L., page 33), and entitled "an act for the better protection of life and property against injury or damage resulting from the operation of steam engines and boilers by incompetent engineers and others, and to repeal an act therein named." The case went up to the Supreme Court of the state from Butler county, the prosecuting attorney of which county had filed a petition in the Circuit Court of Butler County, in *quo warranto.* to oust E. H. Harmon from his

office as district examiner appointed under the aforesaid Roberts law, in which action the prosecuting attorney of said county claimed said act to be unconstitutional. The Circuit Court of Butler County held with the prosecuting attorney, and, on error to the Supreme Court, the judgment of the circuit court was affirmed. That act provided, among other things:

"Section 6. Any person who desires to act as steam engineer shall make application to any district examiner of steam engineers for a license so to act, upon a blank furnished by the engineer, and if, upon examination, the applicant is found trustworthy and competent, a license shall be granted him to have charge of or to operate any steam plant. Such license shall continue in force for one year, unless, after proper hearing, it is revoked for intoxication or other sufficien cause, the said license to be renewed yearly."

Now, the Supreme Court, in passing upon the constitutionality of this act and this section thereof, on page 252 of the above cited case, employs this language:

"By this section the examiner is made the exclusive judge as to whether, or not, the applicant is trustworthy and competent. No standard is furnished by the General Assembly as to the qualifications, and no specifications as to wherein the applicant shall be trustworthy and competent, but all is left to the opinion, finding and caprice of the examiner. He is the autocrat with unlimited discretion, without rules prescribing the qualifications of applicants for license only so that he finds them trustworthy and competent."

The court then calls attention to the fact that there are provided six districts in the state and six examiners, each of whom may have his own notions as to what shall constitute the applicant trustworthy and competent; and so that there may be, in the first instance, as many different standards in the state as there are examiners; whereas, the standard should be uniform throughout the state. The court then proceeds as follows:

"True, by Section 9 an appeal is given to the chief examiner from the action of refusal or revoking a license, but here again the power of the chief examiner is supreme, and without having

rules for his guidance prescribed by the General Assembly; the only provision being that if, upon investigation, he finds that the district examiner was.justified in refusing or revoking such license, he shall sustain it, but otherwise he shall order such license to be given.

·''Thus, allowing the examiner of a district to, in effect, make the law for his district, limited only by his will as to what shall constitute the standard of the qualification of engineers. . That is granting legislative power to such examiner, and the appeal to the chief examiner does not change the matter.

"By Section 1 of Article II of the Constitution, all legislative power is vested in the General Assembly, and this·power can not be delegated to individuals or officers.    *Matthews* v. *Murphy,* 63 S. W. Rep., 785.

''Said Section 6 of the Roberts law is, therefore, in conflict with said Section 1 of Article II of the Constitution, and is void.''

Now, applying the reasoning of the court in that case to the facts in the case at bar, it will be noticed that under this ordinance providing for a board of examiners of four, these examiners are made the absolute autocrats, with unlimited discretion as to whom they shall issue a certificate, and who they shall say is competent.   True, the ordinance provides that the applicant shall be examined and show to the satisfaction of said board that he is fully qualified and competent to operate a moving picture machine; but there is no standard of qualification fixed;· there is no provision for an examination upon any subject or subject-matter.   Under this ordinance the examination might extend only to the color of the applicant's hair, the appearance of his eyes, or any other physical qualities which he might possess.   The examiners might, if they desired, under this ordinance, examine him on conic sections, or integral or differential calculus.   They might test his knowledge of the binomial theory, or inquire into his knowledge and learning of the Greek language and the plays of Sophocles.   There is no rule prescribed to determine the qualifications of the applicant to operate a moving picture machine, except that he be examined and show to the satisfaction of said board that he is fully qualified and competent to operate such machine.

Now, the provisions of the Roberts law passed upon in the above cited case are almost identical with the provision in this ordinance. It is provided therein that the applicant for a license to operate a steam engine shall make his application, and if, upon examination, the applicant is found trustworthy and competent, a license will be granted to him to have charge of or to operate any steam plant. Now, this manifestly means—and the court so found—that if, in the opinion of the district examiner, he was found trustworthy and competent, he should be given a license.

The council of the city of Cincinnati might have prescribed some subjects upon which the board of examiners should examine an applicant for a license to operate a moving picture machine, but they have failed to do so; and it would appear to the court that the omission of some standard of qualification, in the ordinance, makes it fatally defective, under the authority just cited.

After this decision on the Roberts law, the Legislature amended the act and cured the objections pointed out by the Supreme Court, in the above case. And in the case of *Theobald* v. *State of Ohio*, 10 C.C.(N.S.), 536, the learned court points out the change and amendment that was made to the Roberts act, employing this language:

"In the former act (the one declared unconstitutional), no subjects for examination were mentioned. Here the statute fixes just what subjects the applicant is to be examined in, and a reference to the Roberts law as amended will disclose that the Legislature met the objections made to the former act by the Supreme Court by providing, in the law, what subjects the applicant for an engineer's license should be examined upon."

Other authorities were cited to the court by counsel for Sam Lewis, the petitioner, but they are unnecessary to be referred to here, as the court is fully satisfied that the case of *Harmon* v. *State* is decisive of the question involved in the case at bar.

The court is very reluctant to hold this ordinance unconstitutional, having in mind the rule that it is a presumption that

every legislative enactment is constitutional and valid, whether
it be an act of the Legislature, or an ordinance of a city coun-
cil; with this difference: the power to enact an ordinance
by a city council depends upon whether, or not, the Legis-
lature has granted such a power to a municipality. The court
is of the opinion that in Section 3657 of the General Code, the
Legislature has conferred power upon the council of the city
of Cincinnati, and other cities, to pass an ordinance requiring the
operators of moving picture machines to be licensed and to be
qualified, and to submit to an examination touching their quali-
fications; but the ordinance must fix some standard of qualifica-
tion and must prescribe some subjects upon which the applicant
shall be examined, which subjects should relate to his fitness to
operate the machine which he desires to operate under the li-
cense.

Section 3657, General Code, among other things, authorizes
and empowers municipalities to regulate by license or otherwise,
restrain or prohibit theatrical exhibitions, public shows and
athletic games, of whatever name or nature, for which money or
other reward is demanded or received, and so forth.

The court would be glad to sustain this ordinance as a valid
enactment of the council of the city of Cincinnati if a way
seemed clear to do so under the authority cited. The court recog-
nizes the necessity of regulating the operation of moving picture
machines, because of the great danger which accompanies their
use and operation, and especially the danger that may follow
from their operation by incompetent, unskillful and inexper-
ienced operators.

The court is well aware that there have been very grave dis-
asters which have followed the explosion of films in moving
picture theaters, frequently caused by the unskillful operation
of those machines, and the council of the city of Cincinnati, it
appears to the court, is well within its rights, its powers and its
authority when it undertakes to require the operators of such
machines to show themselves to be qualified, competent and trust-
worthy before they shall be permitted to take charge of and

operate so dangerous a mechanism as a moving picture machine.

The defects in this ordinance may very easily be remedied by the council along the same line as the Legislature remedied the Roberts law. It may be readily ascertained what knowledge, skill and experience the operator of such a machine should have before a license should be granted to him, and, when it is ascertained what knowledge, experience and skill he should have. it can very easily be provided in the ordinance that he shall be examined upon the subject-matters which will show his qualification.

For the reasons stated, the court is of the opinion that the applicant, Sam Lewis, should be discharged from custody at the costs of the respondent.

Judgment will be entered accordingly.